| | |
|---|---|
| MICHAEL DONOHOE,<br><br>      Plaintiff,<br><br>    v.<br><br>CORPAK MEDSYSTEMS, INC.,<br><br>      Defendant. | No. 17 CV 3228<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael Donohoe brings suit against Corpak Medsystems, Inc., his former employer, for breach of contract. He alleges that Corpak owes him unpaid sales commissions. Corpak countersues, claiming that Donohoe improperly deleted his work emails and retained Corpak records when he left the company. Corpak moves for summary judgment on both Donohoe's claim and its counterclaims. For the reasons explained below, Corpak's motion is granted as to Donohoe's claim and denied as to its counterclaims.

**I.    Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "To survive

summary judgment, the nonmoving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 591 (7th Cir. 2016) (citation omitted).

## II. Background

### A. Sales Commissions

Corpak is a medical-device company that manufactures and sells feeding tube products. [152] ¶ 10.[1] Donohoe was an account business manager at Corpak, responsible for marketing and selling Corpak products within his assigned geographical region. [152] ¶¶ 12–13, 15. Corpak paid salespeople like Donohoe sales commissions. [152] ¶ 19. The process for determining the amount was complicated by the distribution chain, since the distributors who Donohoe often sold to were not the

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings. The facts are taken from the parties' statements of material fact and responses to each other's statements. *See* [152]; [154] (Donohoe's responses to Corpak's statements of facts); [159] (Corpak's response to Donohoe's statement of additional facts).

Donohoe raises general objections to some of Corpak's statements of facts, including that they are argumentative, immaterial, or not concise or that they do not include page-specific citations to the record or rely on previously undisclosed witnesses. I find Corpak's stated facts to comply with Local Rule 56.1's requirements that they be "short numbered paragraphs" and include "specific references" to their support in the record. To the extent any of Corpak's stated facts are immaterial or argumentative, I do not rely on them.

With respect to Corpak's previously undisclosed witnesses—Wallace and Poland—Corpak does not dispute that they were not included in its initial disclosures as required by Federal Rule of Civil Procedure 26(a)(1). Corpak argues that it served its initial disclosures before filing its counterclaims (and the two new witnesses' testimony mostly concerns the counterclaims), [159] ¶¶ 34–35, but Corpak nevertheless has a continuing obligation to supplement its disclosures. Fed. R. Civ. P. 26(e)(1). Because Corpak did not disclose those witnesses or establish that its failure to disclose was justified or harmless, it cannot rely on the witnesses' testimony to support its motion. Fed. R. Civ. P. 37(c)(1).

2

end-consumers, so Donohoe received lengthy monthly "tracing" reports that traced the ultimate purchasers of the products. [152] ¶¶ 18–19, 22. Donohoe used this report to make sure his sales were being properly credited. [152] ¶ 22.

In 2014, Donohoe received monthly commission payments, accompanied by a cumulative spreadsheet showing his sales and commissions. [152] ¶ 34. Donohoe reviewed the spreadsheets, along with the "tracing" reports, and concluded that there was nothing wrong with the calculations. [152] ¶ 35. At the end of the year, Donohoe's final commissioned sales total was $3,116,798. [152] ¶ 36. In early 2015, Corpak told Donohoe that his 2015 sales baseline was $3,454,949. [152] ¶ 40. The sales baseline is the starting point for determining a salesperson's sales goal for the year—a "sales uplift" amount was added to the baseline to come up with the year's goal. [157] at 4. Donohoe believed that the sales baseline was equal to the prior year's sales amount, leading him to think that the discrepancy between his 2014 sales total and 2015 sales baseline meant that some 2014 sales were omitted from that year's total and therefore he must be owed additional commissions from those sales. [152] ¶¶ 42–43. Donohoe brought his concerns to his supervisor's attention, who explained the discrepancy, but Donohoe did not believe him. [152] ¶¶ 51–52.

### B. Post-Employment

When Donohoe joined Corpak in 2009, he signed an employment agreement. [154] ¶ 11. In doing so, Donohoe agreed that when his employment ended, he would return all the documents that he used during his employment at Corpak or that otherwise belonged to Corpak and that he would sign and deliver a termination certification, certifying that he did not have any of those documents. [154] ¶¶ 13–14.

In 2016, Corpak was acquired by Halyard Health, Inc. [154] ¶ 15. At that time, Donohoe entered into another agreement, this time agreeing that when his employment ended, Donohoe would "immediately turn over all Halyard assets" and "no longer access, transfer, or use Halyard Systems or data, except as may be expressly authorized in writing by Halyard." [154] ¶¶ 16–17.[2] Donohoe also agreed not to engage in any unauthorized "[d]estruction of Halyard resources, including . . . data" and "not access any Halyard System to obtain, copy, alter, or delete any information on the Halyard System that [he was] not entitled to obtain, copy, alter or delete." [154] ¶ 17.

Donohoe's employment at Corpak ended on September 1, 2016. [154] ¶ 24. Donohoe deleted all but five of his work emails on or around his last day at Corpak. [154] ¶¶ 57–58. After he left, Donohoe still had copies of (1) a spreadsheet with "2014 Comp Plan Field ABM" in the title, (2) the "FY15 Field Sales Compensation Plan" for account business managers, (3) a report calculating his sales commission for 2014, (4) a document listing the confidential sales figures for about 20 other salespeople, and (5) four pages of emails Donohoe exchanged with other Corpak employees in 2014. [154] ¶ 26. After this litigation began, Donohoe's attorney emailed copies of those documents to one of Corpak's attorneys. [159] ¶ 30. Donohoe did not submit the termination certification referred to in the 2009 contract. [154] ¶ 33.

---

[2] The 2016 contract defines "Halyard" to include its subsidiaries, and Corpak was a subsidiary of Halyard. [154] ¶ 18.

4

### III. Analysis

#### A. Donohoe's Breach of Contract Claim

Donohoe's claim is that Corpak was contractually obligated to pay him commissions based on his 2014 sales total, which was calculated to equal his 2015 sales baseline. Since Corpak did not pay Donohoe commissions equal to his 2015 baseline, he argues, Corpak breached the contract. "Under Illinois law, to prevail on a breach of contract claim the plaintiff must show: (1) the existence of a valid and enforceable contract, (2) she substantially performed the contract, (3) the defendant breached that contract, and (4) damages resulted from the alleged breach of contract." *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 886 (7th Cir. 2018).[3] Corpak argues that Donohoe has not provided any evidence that a contract obligating it to pay commissions based on Donohoe's 2015 sales baseline exists.

##### 1. *Existence of a Contract*

Donohoe relies on his employment agreement with Corpak to form the basis of his claim, s*ee* [151] at 8, but the employment agreement makes no reference to sales commissions. Donohoe says that it is "undisputed that the contract specifically called for payment of commissions," [151] at 8, but he does not cite to any provisions in the employment agreement to support that notion. Instead, he points to the undisputed

---

[3] Both Corpak and Donohoe apply Illinois law. Corpak says that it contacted Donohoe's counsel before filing its brief to ask his view of the applicable law in an effort to avoid unnecessary research and briefing, but counsel did not respond. Corpak requests that I order Donohoe's counsel to pay the attorneys' fees it unnecessarily incurred, relying on 28 U.S.C. § 1927, which allows for such an order where an attorney "multiplies the proceedings in any case unreasonably and vexatiously." Donohoe's counsel was entitled to see Corpak's final choice-of-law arguments in its filed motion before taking a position, so I deny Corpak's request for attorneys' fees.

5

fact that "Donohoe's compensation was paid in salary but also in commissions." [159]

¶ 4. Whether Corpak paid Donohoe commissions is a separate question from whether it entered into a binding agreement to do so. Donohoe argues that the course of dealing supplemented an express contract to pay commissions (which there is no evidence exists) by providing the calculation method, [151] at 8–9, but he does not argue that the course of dealing itself established an implied contract to pay commissions. *See Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) ("Contracts implied in fact arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract." (citing *Mowatt v. City of Chicago*, 292 Ill. 578, 581 (1920)).

Because Donohoe has not put forth any evidence to suggest Corpak had a contractual obligation to pay Donohoe commissions, Corpak is entitled to summary judgment, and I need not reach Corpak's other arguments.

### 2. Breach of the Contract

I will note that even if Corpak did have a contractual obligation to pay Donohoe sales commissions, there is no evidence to suggest that it breached that obligation. Donohoe argues that the parties' course of dealing establishes that Corpak owed him commissions based on his 2014 year-end sales total, which was supposed to be equal to his 2015 sales baseline.[4] Donohoe notes that "[h]e is not complaining that specific

---

[4] Corpak argues that it did not pay Donohoe commissions on his year-end sales total but rather paid him monthly commissions based on monthly sales. Regardless, his monthly sales add up to his year-end sales total, so if his year-end total was wrong, then at least one of his monthly sales totals was wrong.

6

sales exist for which he did not receive commissions," but rather bases his claim on the year-end total alone. [151] at 7.

Presumably, Donohoe's unspoken theory is that his 2015 sales baseline is evidence that suggests his 2014 sales total was wrong, but Donohoe offers no evidence to show that the 2015 sales baseline was the more accurate figure for his actual 2014 sales.[5] Though Donohoe states in his affidavit that "[e]very year from 2009 to 2014, Donohoe's year-end total sales figure became what was called his 'baseline number' or 'base' for the next year," that statement is contradicted by his own deposition testimony, *see* [135] at 15–16, and the historical figures he provided. *See* [152] ¶ 32; [157] at 10. For example, Donohoe ended 2013 with about $1.05 million in commissionable sales. [152] ¶ 32. His 2014 sales goal was about $2.99 million, reflecting a sales uplift of $207,000, which means that his 2014 baseline sales was about $2.78 million. That is more than double his 2013 total sales.

Cox, a former vice president of sales at Corpak, explained that though Donohoe is correct that the sales baseline is generally based on the prior year's sales total, variances are caused by things like changes in the salesperson's assigned territory. [152] ¶¶ 16, 23.[6] Cox said that in Donohoe's case, the variance between his 2014 sales total and 2015 baseline was caused by a change in how Corpak factored distributor purchases into the calculation. [152] ¶ 37. The change went into effect in 2015,

---

[5] To the extent Donohoe's theory is that Corpak specifically agreed to pay him commissions based on his 2015 sales baseline instead of his 2014 sales total, there is no evidence to suggest such an agreement.

[6] Though Corpak sometimes conflates the terms "baseline" and "sales goal" in its stated facts, Cox is more precise in his deposition testimony.

7

meaning that it did not change the 2014 sales total but required a recalibration of the 2014 sales total to set a 2015 baseline that matched the new system. [152] ¶ 38. Donohoe offers no evidence to dispute that explanation. Indeed, Donohoe spoke at his deposition of a co-worker who was confused because his new year's baseline was higher than the previous year's sales total and came to find out that it was the baseline that was incorrect, not the last year's sales. [135] at 29–30. So the evidence supports the fact that a sales baseline is not a reliable measure of the prior year's sales total, and it alone could not have supported Donohoe's claim that Corpak underpaid his commissions.

### B.  Corpak's Counterclaims

#### 1.  *Breach of Contract*

Corpak brings two breach of contract claims—one based on the 2009 contract and the other based on the 2016 contract. The 2009 contract claim is based on the five documents that Donohoe retained after leaving Corpak's employ and his alleged failure to return the termination certification. The 2016 contract claim is based on the retained documents, the email deletion, and the failure to submit a declaration form.

With respect to the retained documents, Donohoe's only argument in defense is that he returned the documents when he emailed copies to Corpak's counsel. Returning copies while retaining copies does not qualify as returning the documents. In disputing Corpak's contention that the retained documents were within the scope of the documents that he was required to return, Donohoe argues that he only retained them in order to prove the unpaid commissions that form the basis of his

8

lawsuit. His motives are not relevant, but it does raise the question of whether all of the retained documents are within the return provisions' scope. The 2009 contract required Donohoe to return documents "developed or used by [him] pursuant to his employment with [Corpak] or otherwise belonging to [Corpak]," [154] ¶ 28, and the 2016 contract required him to return "Halyard assets." [154] ¶ 17. For example, it is not clear that the spreadsheet that shows how Donohoe's commissions were calculated in 2014, [140] at 55–56, falls within those definitions. Maybe Corpak transferred possession of the document to Donohoe as something like a paystub, or maybe, since the document discloses information about commissions calculations and sales numbers, it belonged to Corpak. The same is true of the 2015 compensation plan, which has signature lines for the employer and employee and appears to be a contract. [140] at 54. Maybe Donohoe was entitled to retain a copy of the contract for himself, or maybe the copy, since unsigned, still belonged to Corpak. Because a reasonable juror could conclude that these documents belonged to Donohoe or to Corpak, summary judgment is inappropriate.

Corpak relies only on Poland's testimony to establish contract damages, but it cannot rely on his testimony because he was undisclosed as a witness. *See* footnote 1, above; Fed. R. Civ. P. 37(c)(1). Even if Poland's testimony were admissible, I am not convinced that Corpak has provided sufficient evidence of damages. Corpak explains that Donohoe's retention of the documents "made it possible for him to improperly share the confidential information with others" and "increased the risk of theft or improper access by a third party." [154] ¶ 32. But Corpak does not allege that any of

9

the possibilities occurred or that there was any concrete reason to believe they would, and damages cannot be based on speculation or conjecture. *See TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 633 (7th Cir. 2007). Though Corpak only requests summary judgment on liability, damages are an element of a breach of contract claim in Illinois. *See id.* at 631 ("Merely showing that a contract has been breached without demonstrating actual damage does not suffice, under Illinois law, to state a claim for breach of contract.").

Corpak relies on an affidavit from Wallace—another previously undisclosed witness—to establish that Donohoe never submitted the termination certification required by the 2009 contract or the declaration required by the 2016 contract. With respect to the 2009 claim, Corpak also relies on Donohoe's deposition testimony where he said that he did not sign the termination certification, [154] ¶ 33, and that on its own is sufficient to establish that Donohoe did not sign it. But Corpak points to no provision in the 2016 contract requiring Donohoe to return the Declaration Confirming Return of Company Property and Information form. Nor has Corpak established that Donohoe did not sign and submit such a declaration, since there it relies only on Wallace's inadmissible affidavit and Donohoe's testimony that he did not remember whether he signed it. [154] ¶ 34.

The breach of the 2016 contract claim is also based on the fact that Donohoe deleted all but five of his emails before leaving Corpak, which Corpak alleges breached Donohoe's agreement not to engage in any unauthorized "[d]estruction of Halyard resources, including . . . data" and "not access any Halyard System to obtain,

10

copy, alter, or delete any information on the Halyard System that [he was] not entitled to obtain, copy, alter or delete." [154] ¶ 17. Donohoe argues that he was allowed to delete his email. He points to the declaration of Corpak's director of IT, who states that "Corpak employees control the email accounts assigned to them, meaning that each employee is able to store, delete, and organize emails, as they believe appropriate." [135] at 232; [154] ¶ 49; [159] ¶ 24. Corpak responds that just because an employee was permitted to selectively delete emails does not mean that Donohoe was permitted to mass delete his emails before leaving the company. That might be a reasonable inference, but it would also be reasonable to infer full discretion to delete emails as the employee believes appropriate. It is left to a factfinder to determine whether Donohoe's deletions were authorized.

Because Corpak has not established that the retained documents belong to it or that Corpak was damaged by the breach of either contract, its motion for summary judgment on both breach of contract claims is denied. The motion is denied as to the 2016 contract claim for the additional reason that whether Donohoe was authorized to delete his emails and whether Donohoe failed to return a contractually required declaration are material facts in dispute.

### 2. *Conversion and Trespass to Chattels*

Conversion and trespass to chattels are related torts. "To prove conversion, a plaintiff must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Cirrincione v. Johnson*,

184 Ill.2d 109, 114 (1998). "Trespass to chattel is an unlawful exercise of authority over the property of another." *Burks v. Lex Special Assets, LLC*, 2017 IL App (1st) 161556-U, ¶ 31, 2017 WL 4924474, at *6 (1st Dist. 2017). The difference between them is "the extent of the alteration" to the property. *Loman v. Freeman*, 375 Ill.App.3d 445, 458 (4th Dist. 2006). Corpak bases both claims on the retained documents and email deletion. Similar to the breach of contract counterclaims, a question remains as to whether the retained documents belonged to Corpak and whether Donohoe's deletion of the emails was done without authorization, and summary judgment is therefore inappropriate.

In response to one of Corpak's stated facts about the retained documents, Donohoe points out that he retained only copies—not originals—of the documents. [154] ¶ 26. He does not couple that fact with any legal argument as to its significance in his brief, but he is on to something with respect to Corpak's conversion claim. "[T]he receipt of copies of documents, rather than the documents themselves, should not ordinarily give rise to a claim for conversion . . . The reason for this rule is that the possession of copies of documents—as opposed to the documents themselves—does not amount to an interference with the owner's property sufficient to constitute conversion. In cases where the alleged converter has only a copy of the owner's property and the owner still possesses the property itself, the owner is in no way being deprived of the use of his property. The only rub is that someone else is using it as well." *FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 303–04 (7th Cir.

1990).[7] So if Donohoe retained only copies of the documents, it could constitute trespass if they belonged to Corpak, but the interference with Corpak's rights would not rise to the level of conversion.

## IV. Conclusion

Corpak's motion for summary judgment on Donohoe's claim [131] is granted, but its motion for summary judgment on its counterclaims [136] is denied.

Donohoe did not file a motion for summary judgment before the deadline, so he forfeited his ability to do so. [145]. Although I may grant summary judgment for a nonmovant after giving notice and time to respond, Fed. R. Civ. P. 56(f)(1), I decline to do so because I find no grounds on which to grant Donohoe summary judgment.

ENTER:

Manish S. Shah
United States District Judge

Date: February 1, 2019

---

[7] This argument could possibly apply to the emails too, since Corpak admits that "emails deleted by a user could be retrieved for a period of 14 days." [154] ¶ 50. Arguably, Corpak retained control and possession of the emails after Donohoe deleted them.

13